UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMMY LEA ROSENOF,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>Defendant. | No.  2:20-cv-01491 CKD (SS)<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively.  The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment.  For the reasons discussed below, the court will grant plaintiff's motion for summary judgment and deny the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born in 1972, applied on September 10, 2015 for DIB and SSI, alleging disability beginning August 18, 2015.  Administrative Transcript ("AT") 27, 101, 111.  Plaintiff alleged she was unable to work due to rheumatoid arthritis, fibromyalgia, and asthma.  AT 111.

In a decision dated September 27, 2017, the ALJ determined that plaintiff was not disabled.[1]  AT 150-160.

The Appeals Council remanded the case for a new hearing, held on August 22, 2019.  AT 77-100, 167-169.  The second ALJ noted in his decision that, "[o]n appeal, although not stated in its remand order, the Appeals Council appears to have been concerned that the claimant's condition worsened after the state agency's reconsideration denial."  AT 17.  The Appeals Council gave the remand ALJ directions about obtaining and evaluating evidence, including "additional evidence about the claimant's medical and physical impairments" and supplemental evidence from a vocational expert (VE).  AT 17.  In a decision dated October 22, 2019 and

---

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

challenged in the instant case, the remand ALJ determined that plaintiff was not disabled. AT 17-29. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.
>
> 2. The claimant has not engaged in substantial gainful activity since August 18, 2015, the alleged onset date.
>
> 3. The claimant has the following severe impairments: rheumatoid arthritis, fibromyalgia, asthma, obesity, bilateral carpal tunnel syndrome, and degenerative disc disease.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work, except she can have frequent, not constant, stooping, kneeling, crouching, crawling, and climbing stairs; and frequent, not constant, handling and fingering. The claimant must avoid hazards, such as dangerous machinery and unprotected heights; and she can be exposed to not even moderate fumes, odors, dust, and gases.
>
> 6. The claimant is unable to perform any past relevant work.
>
> 7. The claimant was born on XX/XX/1972, which is defined as a younger individual age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49.
>
> 8. The claimant has at least a high-school education and is able to communicate in English.
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills.
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from August 18, 2015, through the date of this decision.

AT 20-28.

////

////

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ erred in evaluating the opinions of the treating physician; (2) the ALJ failed to follow the Appeals Council remand order as to plaintiff's fatigue and did not properly consider the evidence of fatigue; and (3) the ALJ erred in evaluating plaintiff's subjective symptoms.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

"Fibromyalgia is 'a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue.'" Revels v. Berryhill, 874

F.3d 648, 656 (9th Cir. 2017) (quoting Benecke v. Barnhart, 379 F.3d 587, 589 (9th Cir. 2004)). "Typical symptoms include 'chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue.'" Id. (quoting Benecke, 379 F.3d at 590). "What is unusual about the disease is that those suffering from it have muscle strength, sensory functions, and reflexes that are normal." Id. (internal quotation marks and alteration omitted). "Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling." Id. (internal quotation marks omitted). "Indeed, there is an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain." Id. (internal quotation marks and alteration omitted). "The condition is diagnosed 'entirely on the basis of the patients' reports of pain and other symptoms.' " Id. (quoting Benecke, 379 F.3d at 590). "[T]here are no laboratory tests to confirm the diagnosis." Id. (alteration in original) (quoting Benecke, 379 F.3d at 590).

Social Security Ruling ("SSR") 12-2p "recognizes that the symptoms of fibromyalgia 'wax and wane,' and that a person may have 'bad days and good days.'" Revels, 874 F.3d at 657 (quoting SSR 12-2p). For this reason, the ruling "warns that after a claimant has established a diagnosis of fibromyalgia, an analysis of her [residual functional capacity] should consider 'a longitudinal record whenever possible.'" Id. (quoting SSR 12-2p). "In evaluating whether a claimant's residual functional capacity renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods, as described in SSR 12-2P and Benecke[, 379 F.3d 587]. The failure to do so is error[.]" Id. at 662.

ANALYSIS

A.  Remand Order

In its November 2018 order of remand, the Appeals Council cited two issues warranting re-evaluation by an ALJ. The AC set forth the first issue as follows:

> The claimant alleges significant fatigue throughout the period at issue due to fibromyalgia, side effects of medication, and poor sleep which is itself a symptom of fibromyalgia. [Citations to record.] Apart from noting that the claimant alleges fatigue, and that a treating source opines the claimant is disabled due to fatigue, the decision

> does not acknowledge or address the claimant's alleged symptom of fatigue or the medical evidence of fatigue. This reflects an error of law. If an individual alleges impairment-related symptoms, we must evaluate those symptoms using the two-step process set forth in the regulations and document that process in the narrative analysis (Social Security Rulings 96-8p and 16-3-p). <u>Remand for consideration of the claimant's fatigue is required</u>.

AT 167 (emphasis added).

Plaintiff asserts that the second ALJ did not sufficiently consider her fatigue, in violation of the order of remand. See 20 C.F.R. § 404.977(b) ("The [ALJ] shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council remand order."); Sullivan v. Hudson, 490 U.S. 877, 886 (1989) ("Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review.").

In his decision, the ALJ summarized plaintiff's allegations of fatigue:

> The claimant testified that she was unable to work due to pain; that she was always tired and wanted to lay down to sleep; and that laying down helped her pain more than standing or sitting in a chair. She also stated that, when she had more activity, she would have more pain due to fibromyalgia and rheumatoid arthritis; and that she would occasionally have to stop doing household chores because she would need to sit down.

AT 23; see AT 59 (plaintiff testified at 2017 hearing that she typically lay down twice a day, for a total of two hours). At the post-remand hearing in August 2019, plaintiff's attorney noted that she had been recently diagnosed with sleep apnea and prescribed a continuous positive airway pressure (CPAP) machine. AT 78. At the same hearing, plaintiff testified that she was always tired and that lying down helped her pain. AT 79. She testified that she had to lie down and rest two or three times a week. AT 93-94.

A medical expert, Dr. Lawrence Sherman, also testified at the post-remand hearing. Having reviewed the medical record, Dr. Sherman stated that he saw the following impairments: seropositive rheumatoid arthritis, fibromyalgia, carpal tunnel syndrome, low back pain, asthma, and obesity. AT 79-80. Dr. Sherman did not mention plaintiff's sleep problems or allegations of fatigue, and the ALJ did not ask about these issues. The only mention of fatigue occurred when Dr. Sherman was asked about medical opinions in the record that differed from his own. AT 82-

1  83. Describing the 2016 opinion of treating physician Dr. Alison Juozokas, Dr. Sherman

2  testified:

3,4,5,6
> That was back in 2016 and he [sic] at that point limited the claimant to sitting for two hours, standing for two hours, which would obviously make it impossible for her to work an eight-hour day. But there were – <u>I thought these were exaggerations, for example needing breaks that would last 60 minutes before returning to work which again just doesn't seem possible to me.</u>

7  AT 83 (emphasis added). Dr. Sherman did not explain why it seemed impossible that someone

8  with fibromyalgia would need long rest breaks at work, and the ALJ did not pursue the issue. See

9  AT 25-26 (summarizing Dr. Sherman's testimony).

10  In fact, plaintiff had a history of fatigue-related complaints. In October 2015, she reported

11  not sleeping and being constantly tired. AT 853. The following month, she again reported being

12  chronically tired. AT 712. In January 2015, plaintiff reported she was constantly fatigued and

13  would wake up at random times during the night; her doctor recommended a sleep evaluation.

14  AT 953. In February 2016, her doctor noted that she stopped working in August 2015 due to pain

15  and constant fatigue; she was "struggling with fibromyalgia" and found it difficult to get out of

16  bed. AT 866. In April 2017, she reported fatigue along with pain and other symptoms. AT

17  1027. In December 2017, Dr. Jessica Whitley ordered a sleep study due to fatigue, daytime

18  sleepiness, and witnessed apnea. AT 1326, 1334, 1336. In the April 2018 study, plaintiff was

19  diagnosed with mild obstructive sleep apnea, with 14.3 events per hour and oxygen saturation at

20  92% at its lowest. AT 1488. Plaintiff began using a CPAP machine to help with nighttime

21  breathing. AT 1331, 1488. Yet in June 2019, after using the CPAP one year, she still reported

22  feeling "tired, fatigued, or sleepy during [the] daytime." AT 1480. Around the same time, she

23  reported "increased fatigue despite using CPAP." AT 1416. In June 2019, neurologist Dr. Doris

24  Chen referred her to a sleep clinic for sleep apnea. AT 1502. The ALJ did not question Dr.

25  Sherman about this record at the hearing.

26  ////

27  ////

28

In the decision, the ALJ discounted plaintiff's claims of fatigue, citing the following reasons:

**Normal exam findings in 2019.** "Although the claimant has alleged having . . . sleep apnea, the medical evidence of record shows that she is essentially <u>neurologically normal</u> . . . and does not demonstrate that she has limitations that significantly limit her ability to function following adequate treatment measures." AT 20-21 (emphasis added), citing AT 1437 (July 2019 clinical note of normal gait, reflexes, sensation, and strength). These 2019 exam findings do not directly bear on plaintiff's alleged fatigue, nor do they rule it out during the four-year period at issue. Moreover, as noted in the legal standard, persons with fibromyalgia may have normal muscle strength, sensory functions, and reflexes while suffering from other symptoms.

**Medical opinions by Dr. Sherman and Dr. Navdeep Nijher**, the latter of whom examined plaintiff in April 2017. "[A]lthough the claimant has also alleged having fatigue . . . and other related symptomatology," the ALJ wrote, "Dr. Nijher and Dr. Sherman determined that <u>her complaints were out of proportion to what was normally seen on examination</u>, and Dr. Sherman concluded that she was able to perform sedentary work despite her allegations." AT 26-27 (emphasis added). As noted above, the ALJ did not question Dr. Sherman about plaintiff's history of fatigue, sleep study, or use of a CPAP for over one year. Dr. Nijher found her to have "5/5 strength with normal sensation in the upper and lower extremities." AT 27; see AT 1170-1177. Contrary to the ALJ's implication, Dr. Nijher did not indicate that plaintiff was exaggerating her symptoms of fatigue; rather, he stated that her difficulties with ambulation could not be explained "from a lumbar spine standpoint." AT 1176. "She had generalized pain to very light lumbar paraspinal muscle palpation, which was out of proportion to what is typically seen with that degree of palpation," Dr. Nijher noted; he concluded that spinal injection therapy would not alleviate her pain. AT 1176. This discussion was unrelated to plaintiff's symptoms of fatigue, as were the examination findings of normal strength and sensation in her extremities. Neither of these doctors' opinions shed much light the on the key issue of fatigue, per the remand order.

////

**Exercise and activities of daily living.** In discounting plaintiff's symptoms of fatigue, the ALJ emphasized that she was able to "perform a significant number of activities of daily living, including walking on a treadmill and swimming." AT 27; see also AT 25 ("[T]he claimant also acknowledged in July 2019 that she had continued to use a treadmill and swim, which is inconsistent with her complaints of having fatigue."), citing AT 1430-1432. In July 2019, plaintiff's doctor noted that she was attempting to eat healthier and exercise regularly in an attempt to lose weight. Though she had been inactive for three weeks following a car accident and rib fracture, she was planning to return to the gym, where she had been able to swim and walk on a treadmill for a total of 60 minutes, three times a week. AT 1430-1432. Though the ALJ placed great emphasis on this fact in assessing her fatigue, the ability to be active for short periods of time is not necessarily inconsistent with plaintiff's alleged need to take rest breaks during the day and/or multiple times per month. As noted above, the ALJ did not question the medical expert, Dr. Sherman, on this issue at the hearing.

**Lack of credibility.** The ALJ found plaintiff's subjective symptoms of fatigue less than fully credible for the reasons set forth above. The ALJ gave "no significant weight" to the 2016 report of treating physician Dr. Juozokas (who opined that plaintiff would require one-hour rest breaks every day and be absent from work 4+ times a month), in part because Dr. Juozokas' findings "appear to be based primarily on the claimant's subjective complaints."[2]  AT 25; see AT 760-761.

Although the remand order specifically required the ALJ to evaluate plaintiff's "alleged symptom of fatigue [and] the medical evidence of fatigue," the ALJ's reasons for discounting plaintiff's alleged need for rest breaks and days off from work are perilously thin. Because the ALJ did not question the medical expert about plaintiff's sleep problems, history of fatigue, and ability to exercise for short periods, the record on this key issue on remand is underdeveloped. The ALJ's failure to thoroughly evaluate this issue, as directed by the Appeals Council, is legal

---

[2] Plaintiff challenges the ALJ's credibility finding and his evaluation of Dr. Juozokas' opinion in separate claims.

error.[3]

Nor is the error harmless, as the VE at the 2017 hearing testified that a need for two unscheduled 30-minute breaks per shift would preclude competitive employment, and the VE at the 2019 hearing testified that absence from work twice a month on a regular basis would also preclude competitive employment. AT 72, 98-99. Accordingly, the undersigned will order this case remanded for another evaluation pursuant to the Appeal Council's 2018 order of remand.

For the foregoing reasons, IT IS HEREBY ORDERED THAT:

1. Plaintiff's motion for summary judgment (ECF No. 21) is granted;
2. The Commissioner's cross-motion for summary judgment (ECF No. 22) is denied;
3. The Clerk of Court shall enter judgment for plaintiff; and
4. The matter is remanded for further administrative proceedings consistent with this order.

Dated: January 11, 2022

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/rosenof1491.bothdibssi.ckd

---

[3] Accordingly, the undersigned does not reach the remaining claims.